UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Roberto Carlos Rodriguez-Rodriguez,<br><br>Defendant. | Case No. 25-cr-175 (SRN/ECW)<br><br>**ORDER DENYING MOTION OF THE UNITED STATES FOR A DETENTION HEARING AND RELEASING DEFENDANT ON CONDITIONS** |

This matter was before the undersigned U.S. Magistrate Judge on June 10, 2025 for an arraignment and a hearing on whether the United States could show that Mr. Rodriguez-Rodriguez was "a serious risk . . . [to] flee." 18 U.S.C. § 3142(f)(2)(A). If the United States could make that showing, the law would have required the Court to have convened a detention hearing. The Court found that the United States did not make that showing, so the Court did not hold a detention hearing. Because a defendant in a federal criminal case can be detained only following a hearing, the decision not to hold a hearing meant that Mr. Rodriguez-Rodriguez could not be detained. The Court therefore ordered Mr. Rodriguez-Rodriguez released on conditions. At the request of the United States, the Court stayed Mr. Rodriguez-Rodriguez's release until 24 hours after the filing of this written Order to allow the United States to seek further review from a District Court Judge.[1]

---

[1] Although the Court stayed its release order until 24 hours after the release of this Order, the United States appealed the undersigned's release decision on the morning of June 11, 2025, before this Order was issued.

## I. THE BAIL REFORM ACT AND THE CONSTITUTIONALITY OF PRETRIAL DETENTION

The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141 *et seq.*, requires a federal district court to detain a criminal defendant pending trial if the Court finds by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any person or the community, or if the court finds by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's presence in court when required. 18 U.S.C. §§ 3142(e), (f).

In 1986, Anthony Salerno was ordered detained by a federal judge in New York under the provisions of the Bail Reform Act. Mr. Salerno appealed from the district court's detention order, asserting that the Bail Reform Act was unconstitutional on its face because it authorizes detention based on a court's assessment of the likelihood that a defendant will commit crimes in the future. *United States v. Salerno*, 481 U.S. 739, 744 (1987). The Supreme Court ruled that although "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," the Court held that the "extensive" procedural safeguards of the Bail Reform Act, coupled with the government's "legitimate and compelling" interest in preventing crime by arrestees who are released pending trial, are sufficient to insulate the Bail Reform Act from being found unconstitutional on substantive due process grounds. *Id.* at 755.

The Supreme Court identified a detention hearing as the Bail Reform Act's most important procedural safeguard. The Court held that a criminal defendant could not be

detained pretrial unless the Court held a hearing at which the defendant could be represented by counsel, could have counsel appointed to represent them if they could not afford adequate representation, could testify and present witnesses on his or her own behalf, could proffer evidence, and could cross-examine the witnesses for the prosecution. *Id.* at 742; *see* 18 U.S.C. § 3142(f). The judicial officer presiding at the hearing then must consider the question of detention through the prism of criteria given in the Bail Reform Act.[2] The judicial officer's discretion to detain a person is limited; detention is permitted only if the judicial officer finds, by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of any other person or the community, or by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's presence in court as required. 18 U.S.C. § 3142(f). Finally, the defendant is entitled to prompt review, by the district court or the appellate court, of an adverse detention decision by a magistrate judge. 18 U.S.C. § 3145(b), (c).

Congress has chosen to indirectly regulate the circumstances under which a defendant may be detained pretrial. Rather than directly stating that a person charged with a certain crime can or cannot be detained, Congress has limited the prosecution's authority to even ask for a detention hearing. Because, under *Salerno*, a defendant cannot be detained without a hearing, a decision not to allow a hearing in a certain type of case has the effect

---

[2] Those criteria are the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the defendant's history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

3

of not allowing detention of a defendant charged only with that type of case. "Consistent with the intent expressed in the legislative history, the statutory scheme of [the Bail Reform Act] continues to favor release over pretrial detention." *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985).

The Bail Reform Act contains two main grants of authority to the prosecution to ask a Court for a detention hearing. Under 18 U.S.C. § 3142(f)(1)(A)–(E), the prosecution may seek a detention hearing as to a defendant charged with certain types of crimes. For example, 18 U.S.C. § 3142(f)(1)(B) allows the prosecution to ask for a detention hearing if a defendant is charged with a crime for which the maximum penalty is life in prison or the death penalty, while 18 U.S.C. §3142(f)(1)(E) grants the prosecution authority to seek a detention hearing in any case involving a minor victim or the possession or use of a firearm or destructive device. Immigration offenses do not appear in the list of offenses at 18 U.S.C. § 3142(f)(1). This was not contested at the detention hearing.

The second grant of authority to seek a detention hearing is found at 18 U.S.C. § 3142(f)(2). This grant of authority is more general, and allows the prosecution to ask the court for a detention hearing if there is a "serious risk that such person [i.e., the defendant] will flee," 18 U.S.C. § 3142(f)(2)(A), or in a case in which the defendant obstructs justice or threatens to do so, or attempts or threatens to injure or intimidate a juror or witness.

In this case, the United States premises its request for a detention hearing on 18 U.S.C. § 3142(f)(2)(A), arguing that there is a serious risk that Mr. Rodriguez-Rodriguez will flee.

## II.    ANALYSIS

### A. "A serious risk that such person will flee" under 18 U.S.C. § 3142(f)(2)(A) is not synonymous with a lack of a reasonable assurance that the defendant will appear as required under 18 U.S.C. § 3142(e).

Title 18 U.S.C. § 3142(f)(2)(A) allows the United States to ask for a detention hearing if it shows the defendant poses a "*serious* risk" of flight. (Emphasis added.) By contrast, 18 U.S.C. § 3142(e) requires a defendant to be detained if there are no conditions of release that will *reasonably assure* the defendant's presence in court as required. Not only are the two statutory provisions directed toward different objectives—one measuring whether the United States can have a hearing at all, the other whether a defendant should be detained—but they use different statutory language to express different standards. Whether there will even be a detention hearing depends upon a showing of a serious risk of flight, while deciding whether to detain depends upon an analysis of "reasonable assurance." While the underlying burden of proof is a preponderance of the evidence in both cases, in one situation the United States must demonstrate to a preponderance a serious risk of flight, and a serious risk of flight is a more demanding showing than a reasonable assurance.

The Court is aware that there are unpublished district court cases from the Northern District of New York that use minimizing language to characterize the showing required of a prosecutor seeking a detention hearing, but over and above the fact that these cases are not precedential for this Court, they are also unpersuasive. *United States v. Marroquin-Ramirez*, 2025 WL 1248652, at *8 (N.D.N.Y. April 17, 2025) and *United States v.*

*Terrance*, 2025 WL 782340, at *8 (N.D.N.Y. Jan. 10, 2025)[3] both describe the burden the United States must meet to get a detention hearing under 18 U.S.C. § 3142(f)(2)(A) as "very low," but this Court cannot find a statutory basis for such a finding. Both decisions also seem to indicate that the standard for obtaining a detention decision is the same as the standard for obtaining detention itself. Such a result overlooks the different statutory language of the two relevant sections of the Bail Reform Act, and it collapses the decision whether to hold a hearing into the decision whether to detain—a result that cannot be reconciled with the Congressional intent in the Bail Reform Act to favor release over pretrial detention. The United States in this case suggests that the standard for obtaining a detention hearing is low because all it need show is a "risk" that Mr. Rodriguez-Rodriguez will flee, but this does not distinguish the two standards, because the standard for detention itself also is written in terms of potentialities, specifically a lack of "reasonable assurance" that the defendant will come to court.

For the foregoing reasons, the undersigned magistrate judge finds that proving by a preponderance of the evidence that a defendant poses a serious risk of fleeing is a higher burden than proving by a preponderance of the evidence that it is not possible to find conditions of release that will reasonably assure the defendant's presence in court as required.

---

[3] *United States v. Orta,* 760 F.2d 887, 891 (8th Cir. 1985), is not on point. That case is concerned only with the standard for detention itself, not with the standard for deciding whether to hold a detention hearing in the first place. *Id.* ("[T]he district court erred in interpreting the 'reasonably assure' standard set forth in the statute as a requirement that release conditions 'guarantee' community safety and the defendant's appearance.")

**B. The United States fell short of meeting its burden of showing by a preponderance of the evidence that there is a serious risk that Mr. Rodriguez-Rodriguez will flee.**

In support of its claim that Mr. Rodriguez-Rodriguez is a serious risk to flee, the United States asserted that (1) Mr. Rodriguez-Rodriguez has been caught crossing, or attempting to cross, the United States border on four occasions, including this case; (2) when first apprehended attempting to cross the border, in 2005, Mr. Rodriguez stated that he had, in the past, been a member of MS-13, a notorious gang; (3) Mr. Rodriguez-Rodriguez lacks any serious ties to Minnesota, but does have ties to El Salvador (of which he is a native) and Mexico (where he lived for four years); and (4) the nature of the offense itself, which requires disregard of an order of final removal.

Detention decisions are highly fact-specific because they require a granular analysis of the crime alleged, the evidence, the defendant, and other relevant information. For this reason the Court is wary of argument by comparison to other cases which appear to also involve four attempted border crossings, or asserted gang ties, or lack of ties to a particular U.S. state. Looking at this case in detail, as one must, the Court is left with the firm belief that the United States did not show a serious risk of flight by a preponderance of the evidence.

Mr. Rodriguez-Rodriguez admitted to a past history with MS-13, not a present relationship with MS-13.[4] The admission was made in 2005, 20 years ago, and even then

---

[4] The United States indicated that Mr. Rodriguez-Rodriguez had MS-13 tattoos. Tr., p. 10 ("He indicated that he had been a member of MS-13 and had number 13 tattoos on his body.") However no photographs of the tattoos were placed in evidence, nor was there any evidentiary description of the tattoos or their significance.

7

referred to something that occurred in the past. It appears that his relationship with MS-13 was a reason Mr. Rodriguez-Rodriguez wanted to leave El Salvador for the United States, Tr. at 11, not a reason Mr. Rodriguez-Rodriguez wanted to flee the United States to El Salvador. It also appears, though, that Mr. Rodriguez-Rodriguez did not seek asylum in the United States based on any fear of MS-13.

The fact that Mr. Rodriguez-Rodriguez keeps trying to cross the U.S. border is similarly unpersuasive. This is evidence of Mr. Rodriguez-Rodriguez wanting to be in the United States, not outside of the United States. Indeed, during the hearing, the prosecutor was clear that the United States might deport Mr. Rodriguez-Rodriguez. Someone who will only leave the United States if forcibly removed by the United States government cannot be considered to be a risk of flight from the United States.

It is true that Mr. Rodriguez-Rodriguez lacks ties to Minnesota. There is no evidence before the Court of family ties, of employment, or of anything else that would bind him to this state and give him an incentive not to flee. Although he has two children who live in Minnesota, the prosecutor pointed out that Mr. Rodriguez-Rodriguez is charged in state court with physically abusing those children, from which one can infer that the chances are low that the relationship between Mr. Rodriguez-Rodriguez and his children is a good relationship that would cause Mr. Rodriguez-Rodriguez to be reluctant to flee. It is also true, though, that there is evidence, though non-specific and 20 years old, that Mr. Rodriguez-Rodriguez fears returning to El Salvador.

Finally, as to the claim that Illegal Reentry is a type of offense that leads to a detention hearing simply because of the nature of the crime, there are two reasons that this

8

argument is unconvincing. First, the United States has not directed the Court to any reported case in which any crime—whether Illegal Reentry or a different offense—has been held to lead per se to a detention hearing because it has disregard of a court order as an element. In fact, if followed, this argument would lead to a detention hearing in all cases, since all criminal acts require disobedience of the law. Second, if Congress agreed with the prosecution, Congress could have straightforwardly added Illegal Reentry to the list of crimes found at 18 U.S.C. § 3142(f)(1).

For all the foregoing reasons, the undersigned finds that the United States has not met its burden of showing by a preponderance of the evidence that Mr. Rodriguez-Rodriguez is a serious risk to flee, and therefore denies the request of the United States for a detention hearing in this case.

Because U.S. Immigration and Customs Enforcement has placed a detainer on Mr. Rodriguez-Rodriguez, he will remain in custody notwithstanding this decision. Because Mr. Rodriguez-Rodriguez will not truly be released, the Court finds it unnecessary to furnish a list of conditions of release.

SO ORDERED.

Dated: June 11, 2025                              *s/ John F. Docherty*
                                                                                JOHN F. DOCHERTY
                                                                                United States Magistrate Judge